UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SALMA A. MOHAMMED<br><br>    Plaintiff,<br><br>    v.<br><br>U.S. CITIZENSHIP AND IMMIGRATION SERVICES;<br>TRACY RENAUD, in her official capacity as Associate Director, USCIS Service Center Operations Directorate;<br>JEFFREY ROSEN, in his official capacity as Acting Attorney General of the United States;<br>CHAD F. WOLF, in his official capacity as Acting Secretary of the Department of Homeland Security<br><br>    Defendants. | Civil No.: |

## PETITION FOR WRIT OF MANDAMUS AND COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff Salma A. Mohammed is a citizen of Yemen whose Temporary Protected Status ("TPS") extension application and corresponding Employment Authorization Document ("EAD") extension application are long-pending. Plaintiff has not resided in Yemen for over eight years, as the Department of Homeland Security has indicated that returning to Yemen presents a serious risk to Yemeni nationals' personal safety due to the ongoing armed conflict. Although she timely filed both renewal applications ***more than 255 days ago***, Defendant USCIS has unreasonably failed to adjudicate those applications. Plaintiff lost her valid authorization to work in the United States over 120 days ago, when both her TPS and her EAD expired. Further, Plaintiff has repeatedly personally requested that Defendant USCIS expedite her applications, has sought Congressional assistance, and has sought assistance from the USCIS's Ombudsman's office—all without meaningful responses. Without a job, Plaintiff will be forced to return to Yemen, a country in the midst of armed conflict where over 230,000 people have died since

2015, and known for its discrimination against women.

Defendant USCIS's unreasonable and undue delays have irreparably harmed and will continue to harm Plaintiff because: (1) without a valid EAD, she lost her only source of income; (2) she faces the imminent risk of losing her job as her employer will terminate her period of unpaid leave on January 31, 2021 and seek another employee to fill her position; (3) without authorization to work, she is rapidly depleting her savings; and (4) she has lost income that she cannot recover in a lawsuit against these sovereign Defendants for monetary damages. With her savings nearly depleted, and the imminent risk of losing her only source of income in the United States, Plaintiff has filed this lawsuit to remedy Defendants' unreasonable failure to adjudicate her applications.

## JURISDICTION

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), the Administrative Procedures Act, 5 U.S.C. § 702, and the Mandamus Act, 28 U.S.C. § 1361.

## VENUE

2. Venue in this district is proper under 28 U.S.C. § 1391(e)(1) because Plaintiff resides in this district.

## PARTIES

3. Plaintiff, Salma A. Mohammed, is a citizen of Yemen and resident of Waltham, Massachusetts, whose timely filed TPS renewal application is pending.

4. Defendant United States Citizenship and Immigration Services ("USCIS") is the agency within the Department of Homeland Security ("DHS") which is responsible for adjudicating TPS extensions and issuing Employment Authorization Documents ("EAD").

5. Defendant Tracy Renaud is sued in her official capacity as Associate Director, USCIS Service Center Operations Directorate, USCIS. Ms. Renaud's Service Center Operations Directorate provides services for persons seeking immigration benefits and provides decisions to individuals requesting immigration benefits at the Vermont Service Center, where

Plaintiff's applications remain pending.

6. Defendant Jeffrey Rosen (or his successor in office), named in his official capacity, is the current Acting Attorney General of the United States.

7. Defendant Chad F. Wolf (or his successor in office), named in his official capacity, is the current United States Acting Secretary of the United States Department of Homeland Security.

### STATUTORY AND REGULATORY BACKGROUND

8. The Immigration and Nationality Act ("INA") provides that nationals of countries that are designated by the Attorney General as having extraordinary conditions that make the country too unsafe to return to, may apply for TPS. 8 U.S.C. § 1254a(a)(1).

9. Once TPS is granted, the INA provides that the Attorney General "shall not remove the alien from the United States during the period in which such status is in effect." 8 U.S.C. § 1254a(a)(1)(A). Thus, TPS creates a safe-haven for qualifying foreign nationals, while there are extraordinary conditions in their home country that prevent them from safely returning.

10. The INA further provides that, "[the Attorney General] … **shall** authorize the alien to engage in employment in the United States and provide the alien with an "employment authorized" endorsement or other appropriate work permit." 8 U.S.C. § 1254a(a)(1)(B) (emphasis added).

11. Accordingly, the INA's implementing regulations require that, "[u]pon approval of an application for Temporary Protected Status, [U.S. Citizenship & Immigration Services] **shall** grant an employment authorization document [EAD] valid during the initial period of the foreign state's designation (and any extensions of such period)." 8 C.F.R. § 244.12(a) (emphasis added) (hereinafter "TPS EAD Rule").

12. The regulations also provide that "aliens granted Temporary Protected Status must re-register periodically in accordance with USCIS instructions.  Such registration applies to nationals of those foreign states designated for more than one year by DHS or where a designation has been extended for a year or more. ***Applicants for re-registration must apply***

3

*during the period provided by USCIS*."  8 C.F.R. § 244.17(a) (emphasis added).

13. On September 3, 2015, the Secretary of Homeland Security announced that Yemen would be designated for TPS, "upon finding that there is an ongoing armed conflict within the foreign state and, due to such conflict, requiring the return of nationals of the state would pose a serious threat to their personal safety.  80 FR 53319-23 (Sept. 3, 2015).

14. The DHS has since continued to re-designate TPS for Yemen.  Most recently, on March 2, 2020, the Secretary of Homeland Security re-designated TPS for Yemen until September 3, 2021.  This allowed qualifying Yemenis with TPS to apply for an extension of their status until September 3, 2021.  85 FR 12313 (March 2, 2020).

15. Through the publication of its most recent notice in the Federal Register, DHS also granted an *automatic* extension of the validity of EADs issued under the preceding 18-month TPS designation of Yemen, which were set to expire on March 3, 2020, for 180 days until August 30, 2020.  *Id.*

### FACTS

16. Plaintiff is a citizen of Yemen and resident of Waltham, Massachusetts. (Mohammed Aff. ¶ 1).

17. Plaintiff has held TPS status since June 14, 2016, having most recently been granted TPS status by the USCIS Vermont Service Center in Saint Albans, Vermont on November 29, 2018.  (*Id.*, ¶¶ 11, 16).

18. Plaintiff has been residing in the United States for more than eight years, since August 25, 2012, initially as a college student pursuant to an F-1 student visa, and most recently in TPS status for over four years.  (*Id.*, ¶ 2).

19. Plaintiff has not left the United States since she was last admitted to the country on May 27, 2015.  (*Id.*, ¶ 6).

20. Twice before, Plaintiff has applied for—and Defendant USCIS has approved—EAD cards authorizing Plaintiff to lawfully work in the United States, as required

under the TPS EAD Rule.  (*Id.*, ¶¶ 13-17).

21.	Plaintiff's most recently granted EAD was valid from November 29, 2018, until the TPS designation period for Yemen was set to expire on March 3, 2020.  (*Id.*, ¶ 17, Mohammed Aff. Exhibit J).

22.	On March 2, 2020, just one day prior to the expiration of the TPS designation for Yemen, the Department of Homeland Security announced an 18-month re-designation of TPS for Yemen, as noted above.  As such, Defendant USCIS required Plaintiff to file the extension of her designation within a two-month window:  March 2, 2020 – May 1, 2020. (Mohammed Aff. ¶ 18).

23.	On April 17, 2020, Plaintiff timely and properly filed a Form I-821 to request a renewal of her TPS through September 3, 2021.  Concurrently with that application, Plaintiff filed a Form I-765 to extend her EAD for a period to match her TPS extension.  (*Id.*, ¶ 20).

24.	As noted above, because her EAD was automatically extended for 180 days, Plaintiff was authorized to continue working beyond March 3, 2020 until August 30, 2020. (*Id.*, ¶ 19).

25.	On April 21, 2020, Defendant USCIS issued a Notice of Action (Form I-797C), bearing Plaintiff's case number A207991875, stating "that USCIS is able to reuse your previously captured fingerprints and other biometrics."  The Notice confirmed that it was not necessary for Plaintiff to appear at a USCIS Application Support Center for a biometrics appointment.  (*Id.*, ¶ 20, Mohammed Aff. Exhibit L).

26.	On April 22, 2020, Defendant USCIS issued a Receipt Notice (Form I-797C) bearing the case number A207991875, confirming that Plaintiff filed her Form I-821 to renew her TPS.  That same day, Defendant USCIS issued another Receipt Notice (Form I-797C) bearing the case number A207991875, confirming that Plaintiff filed her Form 1-765 to extend her EAD.  (*Id.*).

27.	On April 24, 2020, Plaintiff relied upon Defendant USCIS's previous

extensions of her TPS and the TPS EAD Rule when she applied for a position with iRobot. The hiring process was extensive and competitive. After a week-long coding assignment and six interviews, iRobot offered Plaintiff a Data Analyst position on June 5, 2020. (Mohammed Aff. ¶ 21).

28. Concerned about presenting an EAD scheduled to expire on August 30, 2020 on her first day of work, on June 8, 2020—three days after receiving her job offer—Plaintiff filed a request to expedite the processing of her Form I-765 EAD renewal application through Senator Elizabeth Warren's office. On June 18, 2020, Defendant USCIS denied Plaintiff's request to expedite because the documentation submitted "was not sufficient to demonstrate severe financial loss to a company or person…" (*Id.*, ¶ 22).

29. Plaintiff filed a subsequent request to expedite her Form I-765 EAD renewal application through Senator Warren's office on July 23, 2020. A representative from Senator Warren's office advised Plaintiff to seek a letter from her employer, iRobot, demonstrating financial hardship prior submitting the expedition request to Defendant USCIS. (*Id.*, ¶ 23).

30. On August 11, 2020, after obtaining the letter from iRobot, Senator Warren's office initiated another expedition request with Defendant USCIS. (*Id.*, ¶ 24).

31. On August 24, 2020, six days before Plaintiff's work authorization was set to expire, Defendant USCIS denied Plaintiff's expedition request stating that Plaintiff's case "is pending security checks." (*Id.*, ¶ 25).

32. On August 30, 2020, Plaintiff's eligibility to continue working in the United States expired. Her employer permitted Plaintiff to take a period of unpaid leave through November 30, 2020 in order to retain her position without running afoul of any immigration laws. (*Id.*, ¶ 26).

33. Knowing that she would be unable to work, Plaintiff enrolled in Brandeis University's Master of Arts in International Economics and Finance program. After submitting a petition to the Dean, Plaintiff received limited financial assistance to cover living expenses for

one semester.  As of this filing, Plaintiff will not receive additional financial assistance after December 31, 2020.  (*Id.*, ¶ 27; *see* Brimhall-Vargas Aff.).

34. On eight (8) separate occasions since August 30, 2020, Plaintiff has attempted to contact Defendant USCIS—on her own, by requesting Congressional Intervention, and by requesting assistance from the USCIS Ombudsman's and Community Relations offices—to resolve the TPS and EAD adjudication delays.  Plaintiff has received no meaningful replies to any of her inquiries.  Plaintiff provides extensive details of all of her communications in her Affidavit.  (Mohammed Aff. ¶¶ 28-46, Mohammed Aff. Exhibit O).

35. Since August 24, 2020, Plaintiff has been repeatedly told that her case is pending security checks, with no additional details.  In an attempt to understand why there could be a security check issue, on September 23, 2020, Plaintiff submitted a request for an Identity History Summary to the Federal Bureau of Investigation ("FBI").  By letter dated September 28, 2020, the FBI Criminal Justice Information Services Division informed Plaintiff that "[a] search of the fingerprints provided by this individual has revealed no prior arrest data at the FBI." (Mohammed Aff. ¶ 31).

36. As detailed in Plaintiff's Affidavit, following this reassurance from the FBI, Plaintiff continued to contact Defendant USCIS without receiving any meaningful replies. (*Id.*, ¶¶ 32-45, Mohammed Aff. Exhibit O).

37. On December 11, 2020, Plaintiff discovered that her account profile on the USCIS website incorrectly spells her middle name.  (Mohammed Aff. ¶ 46).

38. Plaintiff timely filed her TPS extension applications within the required two month period.  Plaintiff filed her EAD extension more than four months ahead of expiration.

39. Plaintiff's extension applications have been pending for more than 255 days, during which time she has received no meaningful updates about her case from Defendant USCIS.

40. As a direct result of Defendants' inaction, Plaintiff lost work authorization over 120 days ago, on August 30, 2020.  Without a valid EAD, she was forced to stop working at

iRobot, has not earned an income in almost four months, and is depleting the small amount of savings she managed to accumulate. (*Id.*, ¶¶ 49-52).

41.     Plaintiff is suffering significant financial loss due to the loss of her employment. Plaintiff is losing gross earnings of $6,500.00 per month due to the loss of salary. (*Id.*, ¶ 50, Mohammed Aff. Exhibit Q).

42.     Plaintiff's employer, iRobot, has "suffered delays in product delivery and future development projects" due to Plaintiff's absence. Although iRobot extended Plaintiff's temporary unpaid leave until January 31, 2021, production and development needs require iRobot to hire someone to take over her position if she cannot obtain an EAD before the expiration of her leave. Once another individual is hired, Plaintiff will no longer have a position with iRobot and will be tasked with searching for a job during a global pandemic. (Mohammed Aff. ¶¶ 53-54).

43.     Furthermore, Plaintiff has no family in the United States and, without her only source of income or any other means to financially support herself, faces the imminent harm of being forced to return to war-torn Yemen, a country in which she has not resided for more than eight years, since 2012. (*Id.*, ¶ 57).

44.     The armed conflict in Yemen has created a humanitarian crisis where civilians lack food, medical care, and are frequently faced with random acts of violence. The Department of Homeland Security has itself indicated that, "requiring Yemeni nationals in the United States to return to Yemen would pose a serious threat to their personal safety," due to the ongoing armed conflict within the country. Indeed, this is the reason Yemen has been designated for TPS since September 3, 2015. (*Id.*, ¶¶ 7-8, Mohammed Aff. Exhibit E).

45.     In a recently published report by the International Rescue Committee, as a result of its civil war, Yemen is the world's most dangerous country and the country in most need of humanitarian assistance. (Mohammed Aff. ¶ 4, Mohammed Aff. Exhibit C).

46.     Further compounding the risk that Plaintiff will suffer irreparable harm if she is forced to return to Yemen due to her inability to work, is the fact that she is a young

woman who came of age in the United States. According to the Department of State's 2019 Country Report on Human Rights Practices: Yemen, "Women faced deeply entrenched discrimination in both law and practice in all aspects of their lives. Mechanisms to enforce equal protection were weak, and the government could not implement them effectively."  (Mohammed Aff. ¶ 10).

47. Plaintiff has relied upon, and fully complied with, the TPS EAD Rule to obtain an EAD, acquire employment, and to maintain her only source of supporting herself in the United States.  (*Id.*, ¶ 56).

48. The delay in renewing Plaintiff's timely filed TPS and EAD renewals has and will continue to cause significant financial and emotional hardship to Plaintiff, who faces an ongoing harm as she has lost four months' worth of wages, and faces the even greater imminent harm of losing her job, after depleting her savings, during the COVID-19 pandemic.

49. Adjudicating Plaintiff's applications takes minimal time and resources and is not a burden to the Defendants.

50. Defendants' unreasonable delay to fulfil their legal obligations prejudices Plaintiff and Plaintiff's employer in the midst of a global pandemic.

51. Plaintiff has no means apart from her present TPS and EAD extension applications to continue working.  She has no other adequate remedy available to her.

## CLAIMS FOR RELIEF

### Administrative Procedure Act

52. Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1-51 above.

53. The Administrative Procedure Act, 5 U.S.C. § 555(b), mandates that an agency "shall proceed to conclude a matter presented to it…within a reasonable time."  Section 706(1) provides the Court with authority to compel agency action when unreasonably delayed.

54. "Agency action," for purposes of the APA includes, an agency's "failure to act." 5 U.S.C. § 551(13).

55.     Defendants have a non-discretionary duty to take the discrete actions of (a) resolving the pending security checks, and (b) adjudicating both Plaintiff's TPS extension application and her EAD extension application within a reasonable period of time.

56.     Defendants have unreasonably delayed adjudication of Plaintiff's TPS and EAD applications, considering that Plaintiff's applications were filed solely as renewals (not an initial application) and Defendants' regulations required Plaintiff to wait until a two month window, and not before, to file for extension of her status and work authorization.

57.     Defendants have unreasonably delayed the issuance of Plaintiff's EAD, because Defendants failed to issue her EAD within the last 255 days, even though Plaintiff timely submitted her extension applications, and because Defendants' failure to act directly caused Plaintiff to lose her only source of income, deplete her remaining financial resources, and place her in imminent harm of losing her employment during a global pandemic.

58.     Defendants' failure (a) to resolve any applicable security checks, and (b) to adjudicate Plaintiff's TPS and EAD extension applications, beyond the expiration of her EAD, constitutes an unreasonable failure to act on those non-discretionary duties to take such discrete actions.

59.     There is no other adequate remedy available to Plaintiff and she is clearly entitled to the relief requested.

Mandamus Act

60.     The Mandamus Act, 28 U.S.C. § 1361, provides the Court with the authority to compel an officer or employee of any agency of the United States to perform a duty owed to Plaintiff.

61.     Plaintiff has a clear right to the relief requested – the adjudication of her TPS extension and EAD renewal. 8 U.S.C. § 1254a(a), 8 C.F.R. § 244.10, and 8 C.F.R. § 244.12.

62.     Defendant has a clear duty to perform the act in question – to adjudicate

the TPS extension and EAD renewal in a reasonable time under the circumstances.  5 U.S.C. § 555(b).

63. The circumstances include the fact that Plaintiff was required to wait to file for renewal of her TPS status and her EAD until between March 2, 2020 and May 1, 2020.  Due to the automatic EAD extension, Plaintiff timely filed for her EAD renewal more than four months prior to its expiration.

64. Plaintiff has been unable to work for more than 120 days.

65. In the past, Plaintiff successfully twice-renewed her TPS and EAD authorization without undue delays.  Now, her applications have been pending for more than 255 days.

66. Without a valid EAD, Plaintiff is unable to work and support herself while residing in the United States.

67. Under the circumstances it is unreasonable for Defendants to delay adjudication of her TPS and EAD applications.

68. No other adequate remedy is available. Plaintiff has already initiated and submitted multiple requests to the agency to adjudicate her application setting out facts for consideration under the circumstances and Defendant USCIS has denied those requests.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Assume jurisdiction over this action;
2. Compel Defendants to review and resolve any applicable pending security checks;
3. Compel Defendants to adjudicate Plaintiff's I-821 (TPS) and I-765 (EAD) applications;
4. Order Defendants to review and correct any errors, including spelling errors, within Plaintiff's Department of Homeland Security file which may be the cause of delays; and

5. Award such further relief as the Court deems necessary or proper.

Dated:

December 29, 2020

Respectfully submitted,

SALMA A. MOHAMMED

By her attorneys:

*/s/ Laura E. Martin*
Susan M. Finegan (BBO #559156)
Susan J. Cohen (BBO #546482)
Laura E. Martin (BBO #705617)
Mintz, Levin, Cohn, Ferris, Glovsky
    and Popeo, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000
SMFinegan@mintz.com
SJCohen@mintz.com
LEMartin@mintiz.com

106557351v.2